*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  05a0013p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 04-5136

JASON SETTLE,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-20393—Samuel H. Mays, Jr., District Judge.

Argued:  December 3, 2004

Decided and Filed:  January 11, 2005

Before:  SILER and CLAY, Circuit Judges; BERTELSMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:**  April R. Goode, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Camille R. McMullen, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.  **ON BRIEF:**  April R. Goode, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Camille R. McMullen, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

## OPINION

---

CLAY, Circuit Judge.  Defendant Jason Settle appeals the district court's denial of his motion to dismiss the indictment on one count of knowingly possessing, in and affecting commerce, a firearm, after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g). Settle argues that the district court no longer had jurisdiction when, after pleading guilty to the indictment, he obtained an order from the Shelby County Criminal Court declaring his prior felony conviction, upon which his federal indictment is based, to be void *ab initio*. Settle also appeals his  sentence, arguing that the court erred in finding that the relevant conduct of his felon-in-possession conviction required that he be sentenced under U.S. SENTENCING GUIDELINES MANUAL ("GUIDELINES") § 2K2.1(c)(1)(A).  For the reasons that

---

[*]The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

follow, we **AFFIRM** Settle's sentence and the district court's order denying his motion to dismiss the indictment.

## I.

### A.     Substantive Facts

On July 4, 2002, Memphis Police officers on routine patrol observed Jason Settle driving a Toyota Camry. The police determined that the license plate corresponded to a 1982 Buick. Settle pulled over as the officers turned around to effect a traffic stop. Officers observed Settle exit the vehicle with a black pistol in his hand. Settle threw down the gun and ran, but was apprehended after a short foot chase. The police recovered the pistol, a Smith & Wesson .357 caliber magnum. The officers issued Settle a misdemeanor citation for violation of vehicle registration, unlawful possession of a weapon, and evading Arrest. The ensuing police investigation revealed that Settle had been convicted of aggravated assault in Shelby County Criminal Court on October 4, 2000.

After receiving the citation on July 4, 2002, Settle embarked on a campaign of violence, robbery, and intimidation. On July 17, 2004, Taurus Jennings and Lonnie Young arrived at H & S Market on Alcy Road and exited their vehicle when Settle and three others pulled into the area in an Acura. Settle exited his vehicle, said, "I told you that I was going to blow your ass off," and, as he approached Jennings and Young, fired from a black semi-automatic handgun, striking Young's hip and his back. As Young lay on the ground, Settle stood over him and shot his left leg. Young suffered a grade four liver injury, a shattered left femur, and a spinal injury that left him paralyzed from the waist down. When Jennings attempted to grab the gun from Settle, Settle fired the weapon, hitting Jennings in the right hand. After Settle left the scene, two witnesses positively identified Settle from a photo spread, and the police recovered three spent .45 caliber shell casings from the scene.

Witnesses informed the police that Settle's attack had been motivated by an old grudge that he had with Young involving a craps game during which Settle robbed Young of his money. Young himself later confirmed that Settle had robbed him of $250 in May 2002. Young also told investigators that some time thereafter, Settle caught sight of him walking near the Alcy Apartments and began to shoot at him from a black Camaro. On that occasion, Young managed to escape to his aunt's house.

On July 19, 2004, an arrest warrant was issued for Settle. On the same day, two of the witnesses to the July 17, 2004 shooting contacted police investigators and stated that Settle had called them and that unknown males had been sent to their homes and made threats regarding their testimony.

On August 16, 2002, officers responded to a complaint from Sirnika Dancer who told police that, earlier in the day, Settle had knocked on her door, pushed her into the living room, put a firearm to the back of her head, and demanded everything she had. Dancer gave Settle $100. As Settle left, he fired his weapon into the home. Later, Dancer's boyfriend called Settle and told him to come back to Dancer's house. Settle complied, but when he returned, he shot into the home again.

On August 17, 2002, police officers responded to a man-down call. The victim, Dorian Boothe, advised officers that Settle had robbed him of $3,800 and shot him. According to Boothe, he and Settle had been together all afternoon. Settle had driven Boothe to Covington Pike Toyota to meet with a salesperson because Boothe was planning to buy a car and had a substantial amount of cash on him. Boothe did not see a vehicle that he wanted, so they left the dealership. Settle then drove to an area unfamiliar to Boothe, stopped the car, pulled out a gun, and demanded Boothe's money. The two men struggled over Settle's gun, and then Boothe fled. Settle caught up with

Boothe, put the gun to Boothe's head, and demanded his money.  Settle then fired two shots into Boothe's  right thigh, took $3,800 from Boothe's left front pants pocket, and left the scene.

Boothe told the officers that he had known Settle for a long time and that he had practically raised him.  He explained that Settle was on the run because he had shot a man on Alcy Road three weeks earlier.  Boothe also told the police that Settle had been staying in different motels.

On August 21, 2002, Settle shot at Ashley West and Calvin Triggs at the Hillview Village Apartments, and both required medical treatment.  Triggs's mother informed investigators that Settle had been threatening her children because they had been talking to police.

The police apprehended Settle on August 30, 2002, at the Microtel motel.  During an interview with investigators, Settle stated that he had received a misdemeanor citation on July 4, 2002 for having a .357 magnum pistol.  Settle also admitted to shooting at Young three times with a 9 mm Handgun at the H & S Market.  Settle stated that he purchased the gun in July from a man in Mississippi, but subsequently sold the gun.  Settle claimed that he shot Young because Young had shot at his vehicle three times in May or June 2002.  He explained that the ill will between him and Young stemmed from an argument that the two had in June while they were shooting dice.  On July 17, 2002, Settle decided to confront Young after he saw Young outside the H & S Market looking at him "real hard."

Settle also admitted to shooting Boothe on August 17, 2002.  According to Settle, he had driven Boothe to pick up money from individuals seeking marijuana and then went to the dealership to purchase a car.  Settle explained that after driving around, he pulled the car over and then Boothe drew a gun on Settle.  Settle stated that he and Boothe wrested over the gun.  Later, Boothe exited the car and shot at Settle.  Settle then exited the car and shot at Boothe twice.  When Settle got back into his car, he saw a plastic bag containing Booth's money, so he kept it.  Settle admitted that he had been armed with a 9 mm handgun that he had purchased in early August of that year.

**B.        Procedural History**

On October 22, 2002, the grand jury sitting in the Western District of Tennessee charged Settle with knowingly possessing, in and affecting commerce, a firearm, after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g).  Settle and his counsel executed a plea agreement that was filed in open court on January 14, 2003, after a plea colloquy under oath.  During the colloquy, Settle indicated that he understood the charge in the indictment and that he was actually guilty of that charge.  According to the plea agreement, Settle pleaded guilty to the sole charge in the indictment because "he is in fact guilty of the offenses charged in the Indictment."  Settle also agreed that he understood that his offense was subject to the guidelines contained in the United States Sentencing Guidelines Manual. The United States agreed not to indict Settle for additional § 922(g) violations relating to his possession of a weapon on July 17, 2002.

The prosecutor, Ms. Jennifer Lawrence Webber, gave the following factual proffer at the sentencing hearing:

> MS. WEBBER: … Your Honor, if this case has [sic] proceeded to trial, the proof would have shown that on July 4th of this past year, Officer Collins and Wells of the Memphis Police Department were on routine patrol.  They followed the defendant operating a 1990 Camry.  When they ran the title on that car, it came back to a 1982 Buick.  In light of that they stopped the defendant.  The defendant exited the vehicle.  They specifically saw a firearm in his hand.  He threw down the firearm and ran.  He was later apprehended.  That firearm was recovered.  It was determined that the gun was in fact manufactured outside the State of Tennessee.  We would

present testimony that the firearm was test fired and found to be operable. We would also present the testimony of the officers that the area where they first observed the defendant, Mr. Settle, operating the vehicle, as well as where they saw him drop the firearm, was within the city limits of Memphis, Tennessee and therefore within the Western District of Tennessee.

We would present evidence that a criminal history check was conducted on the defendant and it was determined that prior to the day that he was stopped he had a felony conviction for aggravated assault in the Criminal Court of Shelby County, which in fact was a felony.

THE COURT: All right, Mr. Settle, you have heard what the government's proof would have been if this matter had gone to trial. Is that correct as to your involvement in this matter?

THE DEFENDANT: Yes, sir.

The court then accepted Settle's guilty plea.

On May 2, 2003, three days before Settle was to be sentenced, Settle moved to withdraw his guilty plea and to dismiss the indictment, or in the alternative, to continue the sentencing hearing. Settle's counsel argued that, after reviewing the presentence report, she determined that Settle "may not be subject to the jurisdiction of the Federal Court as charged." She pointed out that Settle's actual birth date is October 26, 1982, but that the arrest that led to Settle's state court conviction for aggravated assault, which was listed in the presentence report, occurred on March 23, 2000, when Settle was not yet age 18. Evidently, the Criminal Court for Shelby County, Tennessee incorrectly listed Settle's birth date as October 26, 1981, and, therefore, mistakenly failed to transfer Settle to the Juvenile Court pursuant to TENN. CODE ANN. § 37-1-134. That state court conviction was the only adult criminal conviction that would qualify Settle for prosecution pursuant to 18 U.S.C. § 922(g). Settle argued that the entire state court proceeding was void *ab initio* because the adult court did not have jurisdiction over a minor, TENN. CODE ANN. § 37-1-103, and that it purportedly followed that the United States District Court was without jurisdiction.

Settle brought the issue of his unlawful conviction in adult court to the attention of the Shelby County Criminal Court, which thereafter entered an order vacating the cause and conviction as void *ab initio*. The Criminal Court vacated the cause *nunc pro tunc*, dating from Settle's indictment in the Criminal Court.

The district court denied Settle's motion on December 1, 2003. The court found that Settle had not requested that the state court find his conviction void until after he had been indicted for possessing a firearm in violation of federal law and had pleaded guilty to that offense. Indeed, he did not obtain the ruling from the state court until more than 14 months after he had been found in possession of the firearm. The court therefore held that it had jurisdiction over the case because Settle was a convicted felon at the time he possessed the weapon and at the time he was indicted.

The court held Settle's sentencing hearing on January 26, 2004. Based upon the 2002 GUIDELINES, the third revised presentence investigation report listed a base offense level of 28. The report noted that the offense level for violations of 18 U.S.C. § 922(g) should be calculated using GUIDELINES § 2K2.1. *Id.* (citing GUIDELINES app. A). The report noted, however, that § 2K2.1(c)(1)(A) states that if the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, apply § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined using § 2K2.1. Section 2X1.1(c)(1) provides that when an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that

guideline section.  GUIDELINES § 2X1.1(c)(1).  Based on this guideline and Settle's premeditated shooting of Lonnie Young, the probation officer applied GUIDELINES § 2A2.1 (Assault with Intent to Commit Murder; Attempted Murder) to calculate the level, because use of that guideline resulted in a greater offense level than that determined under § 2K2.1.  Section 2A2.1 provides for a base offense level of 28, "if the object of the offense would have constituted first degree murder." GUIDELINES § 2A2.1(a)(1).  Otherwise, the base offense level is 22.  The probation officer found that the appropriate offense level was 28 because "it appears that the object of the offense would have constituted first degree murder."

Based on Young's disabling injuries, the report recommended an increase of four levels pursuant to GUIDELINES § 2A2.1(b)(1)(A), which applies when "the victim sustained permanent or life-threatening bodily injury."  The report also recommended a two-point increase in Settle's base offense level, pursuant to GUIDELINES § 3C1.1 (Obstructing or Impeding the Administration of Justice), because Settle had threatened or intimated witnesses and victims.  The report recommended against an adjustment for acceptance of responsibility because of the recommended § 3C1.1 enhancement.  Settle's total offense level was calculated to be 34.

With regard to Settle's criminal history, the report noted four prior juvenile adjudications that would not count toward Settle's criminal history score under GUIDELINES § 4A1.2(d) because they proceeded the firearms offense by more than five years.  The reported added two points for a juvenile conviction that occurred in 1998, at age 16, pursuant to GUIDELINES § 4A1.2(d)(2)(A) (requiring two points for each juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense).  The report also added three points for an aggravated assault conviction in adult court based on an incident that occurred on March 23, 2000 (when Settle was age 17), pursuant to GUIDELINES § 4A1.1(a) (requiring the addition of 3 points for each prior sentence of imprisonment exceeding one year and one month). The report recommended adding an additional two points to Settle's criminal history score pursuant to GUIDELINES § 4A1.1(d), because he committed the firearms offense while on probation for the aggravated assault conviction.  The total of Settle's criminal history points was seven, establishing a criminal history category of IV.

With a total offense level of 34 and a criminal history category of IV, the guideline imprisonment range was 210 to 262 months, according to the Sentencing Table; however, the guideline range for the firearms offense was restricted by statute to a 120-month maximum. 18 U.S.C. § 924(a)(2).  Therefore, the report recommended imprisonment for 120 months.

Settle objected to the presentence investigation report on several grounds.  First, Settle argued that his base offense level should have been 14, not 28, because the underlying state felony conviction had been dismissed by the time of sentencing.  *See* GUIDELINES § 2K2.1(a)(4)(A) (providing a base level of 14 if the defendant "was a prohibited person at the time the defendant committed the instant offense"); *id.* at Application Note 6 (defining "prohibited person" to mean any person described in 18 U.S.C. § 922(g)).  The probation officer rejected this argument because, in her view, § 2K2.1(c)(1) instructs that § 2A2.1 (Assault with Intent to Commit Murder) be used to compute his base offense level.

Second, Settle objected that, although the court had held that his state conviction for aggravated assault could be used for purposes of qualifying him as a felon under 18 U.S.C. § 922(g), that conviction could not be used to compute his criminal history category.  The probation officer noted that expunged convictions are not supposed to be counted toward criminal history, *see* GUIDELINES § 4A1.2(j), but further noted that such convictions may be considered under § 4A1.3, *see id.* § 4A1.3 (providing that past criminal conduct may be considered when imposing a sentence departing from the otherwise applicable guideline range if reliable information indicates that the

criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct).

Third, Settle objected to the four-level enhancement pursuant to GUIDELINES § 2A2.1(b)(1)(A)), which applies when "the victim sustained permanent or life-threatening bodily injury." Settle argued that his citation for unlawful possession of a firearm on July 4, 2002 was too remote in time from his subsequent acts of violence with a firearm. The probation officer noted that Settle used firearms on July 17, August 16, August 17, and August 30, 2002. Invoking GUIDELINES § 1B1.3, Application Note 9, the probation officer reasoned that all of these incidents were substantially connected to each other by similar *modus operandi* and were part of the same course of conduct. The probation officer stated:

> During a six week and two day period, the defendant threatened or shot individuals on four occasions. Although the reasons for the defendant's actions are not entirely known, it appears that a past disagreement was the motive for the first shooting and robbery was the motive for two of the subsequent shootings. These incidences have similar *modus operandi* and appear to be part of an ongoing series of offenses; therefore, they were included in the relevant conduct.

Fourth, Settle argued that he was entitled to a downward adjustment for acceptance of responsibility, submitting a statement that he was sorry for being in possession of a firearm on July 4, 2002 when the records at that time indicated that he was a convicted felon. The probation officer noted that an adjustment for acceptance of responsibility typically is not appropriate when the offense level has been adjusted upwardly under GUIDELINES § 3C1.1 for obstruction of justice.

Settle informed the court that he had no objection to the facts as set forth in the presentence report; however, he renewed his objection to the court's jurisdiction on the ground that his prior felony conviction in state court had been voided. Settle also argued that the incident on July 4, 2002 was not part of a pattern of conduct because it did not involve any activity other than having a pistol, unlike the incidents that occurred on and after July 17, 2002.

The court rejected Settle's arguments, finding that there was a series of ongoing offenses that are sufficiently related to one another to warrant a conclusion that they are part of that single course of conduct. The court reasoned that the events began with a dispute about a dice game between Settle and Lonnie Young in May 2002, and Settle's "going armed … is directly related to that dispute, whether it is on July 4th, or July 17th." That dispute culminated in the exchange of gunshots between Settle and Young on July 17, 2002. The court further pointed out that Dorian Boothe, whom Settle admittedly shot on August 17, 2002, told police that Settle was on the run because he had shot a man on Alcy Road three weeks earlier (i.e., Lonnie Young at the H & S Market). In the court's view, the crimes that Settle committed after July 17, 2002 until his apprehension on August 30, 2002 involved a course of conduct to evade arrest stemming from his shooting of Young. Hence, Settle's gun possession on July 4, 2002 was linked with all of the subsequent activity involving Young and Settle's attempt to evade arrest for having shot Young.

Having found that all of the post-July 4, 2002 conduct was related, the court found sufficient basis for the two-point increase in Settle's base offense level for obstruction of justice. The court also refused to give Settle credit for acceptance of responsibility, given the pattern of obstruction of justice. The court also adopted the four-level enhancement for the life-threatening bodily injury that Young sustained from Settle's gunshots. The court held that the probation officer correctly determined the base offense level to be 28, and the adjusted level to be 34.

The court accepted Settle's objection that his voided state court conviction for aggravated assault should not be factored into his criminal history calculation pursuant to GUIDELINES

§ 4A1.1(d); the court reduced his criminal history score by two points because Settle was not on probation for the state conviction at the time he committed the firearms offense. That ruling reduced Settle's criminal history category to III with a sentencing range of 188 to 235 months; however, this alteration had no impact because the sentencing range still exceeded the statutory maximum of 120 months for the firearms violation.

The court entered judgment on January 28, 2004 and sentenced Settle to a term of 120 months' imprisonment followed by a three-year term of supervised release. Settle timely appealed.

## II.

## Motion to Dismiss the Indictment

### A.     Standard of Review

This Court reviews *de novo* the district court's denial of a motion to dismiss an indictment on legal grounds. *United States v. Crayton*, 357 F.3d 560, 564 (6th Cir. 2004).

### B.     Analysis

The indictment charged Settle with violating 18 U.S.C. § 922(g), which makes it unlawful for, *inter alia*, any person who has been convicted of a crime punishable by a term of imprisonment exceeding one year to possess, in or affecting commerce, any firearm. After Settle pleaded guilty, his counsel discovered that Settle was only 17 years old at the time he committed the prior felony underlying the alleged § 928(g) violation (a conviction in Shelby County Criminal Court for aggravated assault). Upon Settle's motion, the state court entered a *nunc pro tunc* order vacating that judgment as void *ab initio*. Settle then moved to dismiss the indictment in his federal criminal case on the ground that the district court lacked jurisdiction to enter the judgment of conviction because there was no longer a predicate felony on which to base the alleged § 922(g) violation. The district court denied the motion.

We hold that Settle's argument is foreclosed by clear precedent from the Supreme Court and the Sixth Circuit. In *Lewis v. United States*, 445 U.S. 55, 65 (1980), the Supreme Court held that the defendant's conviction for possessing a firearm after having been previously convicted of a felony (an analogous statute to 18 U.S.C. § 922(g)) was proper, notwithstanding the fact that the defendant was not represented by counsel at the time, in violation of his Sixth Amendment right to counsel. The Court found the relevant statutory language of the Omnibus Crime Control and Safe Streets Act of 1968 to be "sweeping, and its plain meaning is that the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action." *Id.* at 60-61. The Court noted that the statute makes no exception "for a person whose outstanding felony conviction ultimately might turn out to be invalid for any reason," *id.* at 62, and that the "federal gun laws … focus not on reliability, but on the mere fact of conviction," *id.* at 67. Thus, "Congress clearly intended that the defendant clear his status *before* obtaining a firearm, thereby fulfilling Congress' purpose 'broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous.'" *Id.* at 64-65 (quoting *Barrett v. United States*, 423 U.S. 212, 218 (1976)); *accord United States v. Steverson*, 230 F.3d 221, 224 (6th Cir. 2000) (holding that trial counsel was not constitutionally ineffective in defending § 922(g) charge for failing to challenge defendant's prior felony convictions as constitutionally defective; "proof of a defendant's prior felony convictions is admissible for purposes of proving a § 922(g)(1) violation, even if the prior convictions are constitutionally deficient").

In *United States v. Morgan*, 216 F.3d 557, 565-66 (6th Cir. 2000), this Court, applying *Lewis*, held that the defendant's conviction under 18 U.S.C. § 922(g) was valid, notwithstanding the fact that the state court which previously had convicted him of a felony restored his civil rights after

his indictment on the federal firearms offense. The Court held that "[i]t is the status of the defendant on the date he possessed the firearm as alleged in the indictment that controls whether or not he has violated the statute, not his later status after his civil rights have been restored." *Id.* Similarly, in *United States v. Olender*, 338 F.3d 629, 636 (6th Cir. 2003) (citations omitted), this Court held that "[t]he defendant's status on the date of the offense controls whether the felon in possession laws have been violated." Accordingly, the Court held that the defendant's conviction under 18 U.S.C. § 922(g) was proper when, at the time of his possession of ammunition and a firearm, the defendant had been convicted of felonious assault in state court; the fact that the state court subsequently ruled that the conviction had been erroneously entered as a felony instead of a misdemeanor was "irrelevant." *Id.* at 631. *See also United States v. Ledbetter*, No. 85-5343, 1986 WL 16225, at *1-*2 (6th Cir. Mar. 5, 1986) (unpublished; *per curiam*) (holding that it was immaterial that the state court declared the defendant's predicate felony void *ab initio* several months after his conviction on a federal firearms charge).

It is undisputed that Settle had a state court felony conviction for aggravated assault on July 4, 2002, the date on which the police cited him for unlawful possession of a firearm. Therefore, the fact that the Shelby County Criminal Court subsequently invalidated that conviction is irrelevant. The district court properly denied Settle's motion to dismiss the indictment.

Settle's argument that the district court lacked subject matter jurisdiction because of the subsequently invalidated state felony conviction is really a dispute concerning whether the government proved all of the elements necessary to sustain a conviction under § 922(g). As the Seventh Circuit has held, "[t]hat question is easily answered because [the defendant] necessarily admitted every element comprising the offense charged after he pled guilty." *United States v. Wallace*, 280 F.3d 781, 784 (7th Cir. 2002) (citing *United States v. Broce*, 488 U.S. 563, 569 (1989); *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). By pleading guilty, Settle admitted that he had a prior felony conviction, and he may not challenge that admission before this court under the guise of a jurisdictional challenge. *Id.* For this reason as well, Settle's argument lacks merit.

## III.

## Relevant Conduct

### A.      Standard of Review

The Court reviews the district court's legal interpretation of the Sentencing Guidelines *de novo. United States v. Peveler*, 359 F.3d 369, 373 (6th Cir. 2004).

### B.      Analysis

The probation officer's presentence investigation report correctly noted that the offense level for violations of 18 U.S.C. § 922(g) are calculated using GUIDELINES § 2K2.1. *See* GUIDELINES app. A. The probation officer then cited § 2K2.1's "Cross Reference" provision, which states that "[i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense …, apply § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined" using § 2K2.1. *Id.* § 2K2.1(c)(1)(A). Section 2X1.1(c)(1) provides that "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." *Id.* § 2X1.1(c)(1). Based on her opinion that Settle's firearms offense on July 4, 2002 was part of a course of conduct that culminated in Settle's July 17, 2002 intentional shooting and severe injury of Lonnie Young, the probation officer concluded that Settle had used the firearm on July 4, 2002 in an attempt to murder Young. Thus, the probation officer concluded that Settle's conduct was expressly covered by GUIDELINES § 2A2.1 (Assault with Intent to Commit Murder; Attempted

Murder). The probation officer then applied that guideline to calculate the offense level, because use of that guideline resulted in a greater offense level than that determined under § 2K2.1.

GUIDELINES § 2A2.1 provides for a base offense level of 28, "if the object of the offense would have constituted first degree murder." GUIDELINES § 2A2.1(a)(1). Otherwise, the base offense level is 22. *Id.* The probation officer found that the appropriate offense level was 28 because "it appears that the object of the offense would have constituted first degree murder." She increased the offense level by four levels pursuant to GUIDELINES § 2A2.1(b)(1)(A), which applies when "the victim sustained permanent or life-threatening bodily injury." She increased the offense level by another two levels, pursuant to GUIDELINES § 3C1.1 (Obstructing or Impeding the Administration of Justice), because Settle had threatened or intimidated witnesses and victims to avoid apprehension for shooting Young.

Settle objected to the use of the "Cross Reference" Provision of § 2K2.1 to determine the base offense level, arguing that any incidents after July 4, 2002 were not relevant conduct within the meaning of GUIDELINES § 1B1.3. For the reasons that follow, we disagree.

To determine a defendant's sentence, the district court first must refer to Appendix A of the GUIDELINES to determine the guidelines that apply to the "offense of conviction." GUIDELINES § 1B1.2(a). If the offense involved an attempt, the court must look to § 2X1.1 (Attempt, Solicitation, or Conspiracy) as well. *Id.* The court next must determine the "base offense level," *id.* § 1B1.1(b), by determining the "relevant conduct." *Id.* § 1B1.3 (Relevant Conduct (Factors that Determine the Guideline Range)); *see also id.* § 1B1.1, Application Note 1(k) (the term "offense" means "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct)"). The relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "that occurred during the commission of the offense, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* § 1B1.3(a)(1). It also includes all harm that resulted from these acts and omissions and all harm that was the object of such acts and omissions. *Id.* § 1B1.3(a)(3).

In certain cases, the offense level also must be determined based on acts and omissions that the defendant caused "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2).[1] This conduct is only considered, however, "with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." *Id.* GUIDELINES § 3D1.2 provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." GUIDELINE § 3D1.2.

Settle correctly argues that Guideline § 1B1.3(a)(2) does not apply in his case because the firearms offense cannot be grouped with the post-July 4, 2002 offenses in which he attempted to kill Lonnie Young and committed other acts of violence to avoid detection for that offense. *See* GUIDELINES § 3D1.2(d) (providing that "all offenses in Chapter Two, Part A" are specifically excluded from the operation of that subsection.); *also cf. United States v. Battle*, 289 F.3d 661, 671 (10th Cir. 2002) (holding it was not proper to group robbery offense with firearm offense, because

---

[1] Application Note 9 to the guideline explains that, "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." *Id.* § 1B1.3, Application Note 9(A). Further, "[o]ffenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of events." *Id.* § 1B1.3, Application Note 9(B). Relevant considerations include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between offenses." *Id.* When one of these factors is absent, "a stronger presence of at least one of the other factors is required." *Id.*

both counts were covered by § 2A:  "Offenses to which § 2A of the U.S.S.G. applies … may not be grouped.").

If Settle's firearms offense was not groupable with the attempted murder offense, it follows that GUIDELINES § 1B1.3(a)(2) was not relevant to the court's determination of the relevant conduct. Instead, the court should have based its relevant conduct determination solely on Settle's acts and omissions that occurred during the commission of the offense, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, *id.* § 1B1.3(a)(1), as well as all harm that resulted from these acts and omissions and all harm that was the object of such acts and omissions, *id.* § 1B1.3(a)(3).  The court, however, explicitly relied on § 1B1.3(a)(2), referring to Application Note 9, which discusses that section in detail.  *See* J.A. 50 ("I am considering Application Note 9 [to § 1B1.3].  There is an element of common scheme or plan here.").**2**

The government does not attempt to defend the district court's reliance on GUIDELINES § 1B1.3(a)(2).  The government instead argues that Settle's post-July 4, 2002 acts were relevant conduct under § 2K2.1(c)(1), which is the "cross reference" provision for firearms offenses.  That section states that if the defendant used or possessed "any" firearm or ammunition in connection with the commission or attempted commission of another offense, then § 2X1.1 for attempt offenses governs, if that guideline results in a higher offense level.  *Id.* § 2K2.1(c)(1).  The district court, relying on its finding under § 1B1.3 that the July 4, 2002 conduct for which Settle was convicted was "directly related" to his commission of subsequent offenses with other firearms, invoked § 2K2.1(c)(1), which cross references § 2X1.1.  Section 2X1.1 also contains a cross reference provision which states, "When an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section."  *Id.* § 2X1.1(c)(1).  The probation officer, and later the court, deemed Settle's conduct toward Lonnie Young to be an attempted murder, which she determined to be covered by GUIDELINES § 2A2.1 (Assault  with Intent to Commit Murder; Attempted Murder).  Although Settle used a different firearm to shoot Young (as well as other victims) than the firearm that he possessed on July 4, 2002, the government argues that § 2K2.1(c)(1)'s reference to "any" firearm means that the firearm used in the offense of conviction and the firearm used in connected conduct (e.g., the attempted murder of Young) need not be the same weapon for purposes of determining relevant conduct.  Settle disagrees and, if correct, the chain of cross references that the court followed from GUIDELINES § 2K2.1(c)(1)(A) to § 2A2.1 would be broken, and Settle would have to be re-sentenced.

In *United States v. Jardine*, 364 F.3d 1200, 1207 (10th Cir. 2004), the Tenth Circuit rejected the argument that the use of a firearm triggers § 2K2.1(c)(1)'s cross reference to § 2X1.1 only when that firearm is the same firearm that sustained the § 922(g) felon-in-possession convictions.  The court cited the Eighth Circuit's decision in *United States v. Mann*, 315 F.3d 1054 (8th Cir. 2003), which rejected a similar argument when it concluded that the use of "any firearm or ammunition" in § 2K2.1(b)(5), a provision similar to § 2K2.1(c)(1), indicates that the guideline "applies to *any* firearm and not merely to a particular firearm upon which the defendant's felon-in-possession conviction is based."  *Id.* at 1056 (emphasis in original); *see also id.* (finding the reference to "any firearm" to be "unambiguous"; noting that the Sentencing Guidelines uses the term "the" when referring to a specific firearm, whereas "any" applies "'[w]hen any firearm or ammunition will do'")

---

**2**Arguably, the court could have found that Settle's post-July 4, 2002 conduct was relevant conduct under § 1B1.3(a)(3) because it constituted "harm that was the object of" the acts or omissions during the commission of the firearms offense on July 4, 2002.  The record supports the court's finding that the reason that Settle was armed on that date was to shoot Lonnie Young, which he did less than two weeks later, albeit after replacing the gun that the police had confiscated.  Consequently, there is support for the conclusion that the grievous bodily harm that Settle inflicted on Young was the object of his unlawful possession of a firearm on July 4, 2002.

(quoting *United States v. Sutton*, 302 F.3d 1226, 1227-28 (11th Cir. 2002)). Based on *Mann*, the court held that "§ 2K2.1(c)(1) applies to *any* firearm or ammunition, including that firearm or ammunition used by a defendant in connection with another offense, even if different from the particular firearm or ammunition upon which defendant's felon-in-possession conviction is based." *Jardine*, 364 F.3d at 1208 (emphasis in original).

The court in *Jardine* stated that its holding was supported by two further considerations. First, "the Guidelines require courts to consider all relevant conduct when determining the sentencing guideline range," *id.* (citing GUIDELINES § 1B1.3; other citations omitted), and the defendant's use of firearms in past drug transactions and his admitted trading of ammunition for methamphetamine were therefore "clearly relevant" to his sentencing for felon-in-possession charges. *Id.* Second, the defendant's reading of the word "any" would lead to an absurd result by "benefit[ting] those criminals who are not apprehended with the exact firearm they used or possessed in connection with the commission of another offense." *Id.* "In such a case, the government would be precluded from seeking § 2K2.1(c)(1)'s enhancement even when it is undisputed that the defendant used or possessed a firearm, unless it could actually prove it was one of the exact weapons for which the defendant was charged under 18 U.S.C. § 922(g)." *Id.*

Settle argues that this Court's decision in *United States v. Roxborough*, 99 F.3d 212 (6th Cir. 1996) is in conflict with, and therefore trumps, the *Jardine* decision. We disagree. In *Roxborough*, the defendant pleaded guilty to one count of violating 18 U.S.C. § 922(c) for dealing in firearms. *Id.* at 213. Prior to the defendant's arrest on that count, undercover ATF agents had obtained several firearms, two of which whose serial numbers had been obliterated. *Id.* When the serial number were restored, the agents traced the guns back to the defendant. *Id.* At sentencing, the government conceded that it could not establish Roxborough's involvement in removing the serial numbers from the two guns or that any of the firearms seized at the time of his arrest similarly lacked serial numbers. *Id.* Nevertheless, the district court imposed a two-level enhancement under § 2K2.1(b)(4), which applies if "any firearm was stolen, or had an altered or obliterated serial number." GUIDELINES § 2K2.1(b)(4). The district court reasoned that "Roxborough took the risk that the serial numbers on unlawfully sold guns would be obliterated." *Roxborough*, 99 F.3d at 213.

On appeal, this Court held that the obliterated serial numbers were not "relevant conduct" under § 1B1.3 because there was no evidence that the defendant was himself responsible or otherwise connected in any way with the obliteration. *Id.* at 214. Nor was there any evidence that the obliteration of the serial numbers on the two guns "'occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.'" *Id.* (quoting GUIDELINES § 1B1.3(a)(1)). The Court also found that the "any firearm" language contained in the obliteration enhancement provision itself (§ 2K2.1(b)(4)) did not provide more explicit instructions on what constitutes relevant conduct than § 1B1.3. *Id.* at 216. The Court held that "'§ 2K2.1(b)(4) … obviously is not intended to apply to firearms wholly unrelated to the charged offense.'" *Id.* (quoting *United States v. Gonzales*, 996 F.2d 88, 92 n.6 (5th Cir. 1993)). Because there was no evidence relating the two firearms with obliterated serial numbers to the offense of conviction, the Court held that the enhancement under § 2K2.1(b)(4) was inappropriate. *Id.*; *see also Gonzales*, 996 F.2d at 92 n.6 (opining that "any" firearms referenced in § 2K2.1(c)(1) "must at least be related to those in the charged offense," but need not be specified in the count of conviction, in order to be considered part of the relevant conduct).

Neither *Roxborough*, nor *Gonzalez*, which *Roxborough* cites, benefits Settle's cause. These decisions merely stand for the proposition that there must be a relationship between firearms that form part of the relevant conduct and the firearms that are part of the offense of conviction. They do not hold that the firearms have to be the same.

As recounted above, the district court in the instant case found that there was a direct relationship between the firearm that Settle possessed on July 4, 2002 and the different firearm that he possessed on July 17, 2002 – namely, Settle's intent to inflict grievous bodily harm on Lonnie Young. The police's confiscation of Settle's gun on July 4, 2002 required him to obtain the gun with which he shot Young two weeks later. Thereafter, Settle both possessed and used other firearms to intimidate witnesses to the Lonnie Young shooting and to rob individuals in order to obtain money that would assist his effort to avoid detection for the shooting. Specifically, on July 19, 2004, two of the witnesses to the Lonnie Young shooting contacted police investigators and stated that Settle had called them and that unknown males had been sent to their homes and made threats regarding their testimony. On August 16, 2002, Settle held a gun to Sirnika Dancer's head and robbed her of $100; he returned later in the day and fired a bullet into her home. On August 17, 2002, Settle shot and robbed Dorian Boothe, who explained to police that Settle was on the run because he had shot Lonnie Young. On August 21, 2002, Settle shot at Ashley West and Calvin Triggs because they had been talking to police about him. Thus, there was ample evidence in the record showing a clear connection between the firearm that Settle possessed on July 4, 2002 (in an attempt to kill Lonnie Young) and the other firearms he possessed thereafter (in order to shoot Lonnie Young and to avoid detection for that shooting). Accordingly, the district court did not err in finding that Settle's multiple firearm possessions after the date of his offense of conviction were relevant conduct for purposes of applying GUIDELINES § 2K2.1(c)(1)(A).

## IV.

For all the foregoing reasons, we **AFFIRM** Settle's conviction and sentence.