NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0337n.06
Filed: May 15, 2007

No. 05-6591

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JASON SETTLE, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Appellant. | ) | |

Before: SILER and SUTTON, Circuit Judges; JORDAN, District Judge.[*]

PER CURIAM. Jason Settle challenges his 120-month prison sentence. Because the district court did not commit reversible error in applying a cross-reference provision to calculate Settle's guidelines range and because it otherwise imposed a reasonable sentence, we affirm.

I.

On July 4, 2002, Memphis police officers observed Jason Settle driving a car with license plates registered to a different vehicle. Before the officers could pull him over for the violation, Settle stopped, exited his car, tossed a pistol to the ground and began to run away. The officers

_____

[*] The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

caught him after a short chase and issued Settle a misdemeanor citation for driving an unregistered vehicle, possessing a weapon and evading arrest.

The officers confiscated the gun, but it apparently did not take long for Settle to re-arm himself. On July 17 he used a semiautomatic handgun to shoot Lonnie Young outside a local market, paralyzing Young from the waist down. He also shot Young's companion, Taurus Jennings, in the hand during the confrontation.

Tennessee issued a warrant for Settle's arrest on July 19, but that seemingly did not dissuade him. "[O]n the run" from the authorities, JA 137, Settle moved from motel to motel over the next few weeks. On August 16, in need of money, Settle robbed a woman in her home, firing shots into the house as he fled. The next day he demanded money at gunpoint from Dorian Boothe, a man who had known Settle for a long time and who had "practically raised him." *Id*. Boothe resisted and tried to escape, but Settle caught up with him, shot him twice in the thigh and took $3,800 in cash. And on August 21, Settle fired shots at two individuals for talking to the police about his crimes. The police finally arrested Settle on August 30.

A month later, a federal grand jury indicted him on one count of violating the federal felon-in-possession statute, 18 U.S.C. § 922(g), relying on the pistol he threw to the ground while attempting to evade police on July 4. Settle pleaded guilty to the offense.

In preparing Settle's pre-sentence report, *see* Fed. R. Crim. P. 32(c), the probation officer learned that the July 17 shooting was not an isolated incident. Settle and Young, it turns out, had

been involved in an ongoing dispute since May when Settle stole $250 from Young during a craps game. At some point in May or June, Young retaliated by firing three shots at Settle. The shots missed their mark but hit the car Settle was driving. While explaining these bullet holes to his mother, Settle promised that "he was going to do something to Young when he saw him." JA 138. And just before shooting Young on July 17, Settle exclaimed that "I told you that I was going to blow your ass off." JA 136.

At sentencing, the district court applied § 2K2.1(c)(1) of the guidelines, a cross-reference provision that directs courts to sentence weapons offenders under § 2X1.1 if they have "used . . . any firearm . . . in connection with . . . another offense." Reasoning that Settle tried to kill Young on July 17, the district court used the attempted murder guideline to set Settle's base offense level. *See* U.S.S.G. §§ 2X1.1(a), 2A2.1(a)(1) (2003 version). After enhancements for obstruction of justice and for permanently injuring a victim, that left Settle's total offense level at 34. This, together with Settle's category III criminal history, resulted in a guidelines range of 188–235 months. The district court sentenced Settle to 120 months, the statutory maximum for his felon-in-possession offense. *See* 18 U.S.C. § 924(a)(2).

Settle appealed his conviction and sentence, we affirmed, *see United States v. Settle*, 394 F.3d 422, 435 (6th Cir. 2005), and the Supreme Court granted Settle's petition for certiorari, vacated our decision and remanded in light of *United States v. Booker*, 543 U.S. 220 (2005), *see Settle v. United States*, 545 U.S. 1102 (2005). On remand, we reinstated our opinion as to Settle's conviction, amended those aspects of the opinion addressing his sentence and remanded the case to the district

court for resentencing. *See United States v. Settle*, 414 F.3d 629, 634 (6th Cir. 2005). We instructed the district court to (1) decide anew whether to enhance his offense level based on § 2K2.1(c)(1), reasoning that it could apply the provision if it found "a clear connection between the firearm that Settle possessed on July 4, 2002 and any different firearm he possessed thereafter in order to shoot Young," *id.*, and (2) to "impose a reasonable sentence that takes into account the [§ 3553(a)] sentencing factors," *id.* at 632.

The district court followed our instructions. It again applied the cross-reference provision, determining that the various guns Settle used were connected to the underlying crime, and again arrived at a guidelines range of 188–235 months. It then reimposed the 120-month statutory maximum, adding that it would have sentenced Settle "with[in] the guidelines" had it been free to do so. JA 89.

II.

Settle's appeal brings this case before us for a third time. He again argues that the cross-reference provision in § 2K2.1 should not apply to him, and he also challenges the reasonableness of his sentence.

A.

Settle's § 2K2.1(c)(1) argument is largely foreclosed by the amended opinion we entered after the Supreme Court remanded the case to us. He begins by alleging that his behavior after the

police recovered the gun underlying his felon-in-possession conviction is not "relevant conduct" under § 1B1.3 of the guidelines, and that any such behavior thus cannot be taken into account when deciding whether to apply § 2K2.1's cross-reference provision. While Settle is correct that § 1B1.3 generally defines relevant conduct for the purposes of applying the guidelines, we made clear in our prior opinion that, "[i]n determining the relevant conduct for Settle's offense, the district court will be free to consult Guidelines § 2K2.1(c)(1)." *Settle*, 414 F.3d at 632; *see* U.S.S.G. § 1B1.3(a)(4) (relevant conduct includes "any other information specified in the applicable guideline"). That provision broadly encompasses the use or possession of "any firearm . . . in connection with the commission or attempted commission of another offense," U.S.S.G. § 2K2.1(c)(1), limited only by our previously stated requirement that the district court find "a clear connection" between the firearm charged in the offense of conviction and the firearm used in connection with the other offense, *Settle*, 414 F.3d at 634.

Settle next contends that the district court erred in finding a clear connection between the gun police recovered on July 4 and the gun Settle used to shoot Young on July 17. We addressed this matter in our amended opinion as well, noting that the facts "set forth in the presentence report . . . demonstrate a clear connection between the firearm Settle possessed on July 4, 2002 . . . and the other firearms he possessed thereafter (in order to shoot Young and to avoid detection for that shooting)." *Id.* at 631 n.1. Settle did not challenge these facts during the most recent sentencing hearing, and this court's view of them has not changed in the interim. The uncontested facts show that Settle and Young became embroiled in a dispute in May of 2002; that

Young fired shots at Settle at some point in May or June as part of the dispute; that in response to this incident Settle told his mother that "he was going to do something to Young when he saw him," JA 138; and that Settle taunted Young before shooting him on July 17, saying "I told you that I was going to blow your ass off," JA 136. It is quite reasonable to infer from this evidence that Settle's desire to "do something" to Young motivated his "going armed" on July 4, JA 56—connecting the weapon he carried on that date to the weapon he used to shoot Young on July 17.

B.

Settle also challenges the propriety of his 120-month sentence. We disagree, as the sentence is both procedurally and substantively reasonable. *See United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). The district court fulfilled its procedural obligations by correctly calculating the guidelines range (as we have discussed above), appreciating the advisory nature of the guidelines, *see* JA 86 (explaining that it needed to determine an appropriate sentence "under *Booker* and under 18 [U.S.C. § 35]53"), and considering the § 3553(a) factors in crafting Settle's sentence, *see* JA 86–90 (expressly addressing each sentencing factor in light of Settle's conduct).

The sentence also is substantively reasonable. A 120-month sentence already represents a (roughly) one-third decrease from the bottom of the guidelines range, and Settle offers no sustainable argument why that is unreasonable. The nature and circumstances of the felon-in-possession conviction do not help Settle, *see* 18 U.S.C. § 3553(a)(1), as he possessed the firearm in connection with an ongoing dispute that prompted him to shoot and paralyze Young, to fire shots at witnesses

to Young's shooting who had talked to police and to rob two individuals at gun point to fund his effort to escape arrest (one of whom, Boothe, Settle shot twice). These facts also bear on Settle's history and characteristics, *see id.*, as does his "long criminal history starting as a very young person," JA 87. And they bespeak the seriousness of Settle's offense, the need to protect the public from him and the necessity of a significant prison sentence to deter him from committing future crimes. *See* 18 U.S.C. § 3553(a)(2).

Settle counters that a state court invalidated the felony underlying his felon-in-possession conviction (aggravated assault) after he entered his guilty plea in this case. (Tennessee thought that Settle was 18 rather than 17 when he committed the crime and thus mistakenly tried him in Tennessee Criminal Court rather than juvenile court.) We have already rejected Settle's contention that this fact undermines his conviction, *see Settle*, 394 F.3d at 430 (reasoning that "Congress clearly intended that the defendant clear his status *before* obtaining a firearm") (internal quotation marks omitted), and it does not show at any rate that a 120-month sentence is substantively unreasonable.

Settle finally takes the district court to task for seeking to impose a "reasonable" sentence, rather than aiming to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006). We have repeatedly held, however, that such a mistake offers no basis for vacating a sentence when, as here, "[t]he district judge's thorough consideration of the § 3553(a) factors . . . confirms that he did not take his eye off the central sentencing considerations before him." *United States v. Cruz*, 461 F.3d 752, 755 (6th Cir. 2006); *see also United States v. Gale*, 468 F.3d 929, 933 n.4 (6th

Cir. 2006); *United States v. Davis*, 458 F.3d 505, 511 (6th Cir. 2006); *cf. Settle*, 414 F.3d at 632 ("On

remand, the district court must impose a reasonable sentence . . . .").

III.

For these reasons, we affirm.